Argued January 27, reversed and remanded March 24, 1954

IN THE MATTER OF THE ESTATE OF CASIMIR NAWROCKI,
DECEASED

NAWROCKI *v.* KIRKPATRICK, EXECUTOR

268 P. 2d 363

*George L. Hibbard,* of Oregon City, argued the cause for appellant. With him on the brief were Beattie & Hibbard, and John C. Caldwell, all of Oregon City.

*Clifford S. Beckett,* of Oregon City, argued the cause for respondent. With him on the brief were Butler, Jack & Beckett, of Oregon City.

Before LATOURETTE, ·Chief Justice, and WARNER, LUSK, BRAND, TOOZE and PERRY, Justices.

BRAND, J.

On 13 February 1945 the testator Casimir F. Nawrocki executed a will by which he devised real property to his wife Mary E. Nawrocki in lieu of dower. On 23 August 1950 he executed a mortgage on the same property, his wife joining therein for his accommodation. The testator died on 29 June 1951. The estate was admitted to probate and an executor was appointed. His widow filed an election to take under the will in lieu of dower and prayed for an order directing the executor to satisfy the mortgage debt from the residue of the estate and thus to exonerate the devised property therefrom. Testimony was introduced in behalf of the petitioner and in support of her petition. The executor, and thereafter the circuit court, denied relief. The petitioner appeals.

The executor, who is respondent, presents a question of law only. The material portions of the will are as follows:

"1. I hereby direct that all my just debts and funeral expenses be paid from the first money available from my estate.

"2. I hereby devise and bequeath to my wife, Mary E. Nawrocki, the premises described in deed recorded in Book 202 at page 140 of the deed records of Clackamas County, Oregon, together with all furniture and furnishings therein. This gift is made to my wife in lieu of dower and claim of dower.

"3. All the rest and residue of my estate, personal and real, I hereby devise and bequeath to my

two children, Casimir C. Nawrocki and Wanda N. Lamade, share and share alike; and in event that either of them should die before I do and leave no issue, I devise and bequeath the share that would have gone to that child or his issue, to the survivor thereof.

"4. I hereby nominate and appoint E. W. Kirkpatrick of Milwaukie Oregon as executor of this my last will and testament; and I hereby direct that he be not required to furnish bond in order to qualify as such executor."

The petition for exoneration shows that the mortgage was in favor of the State Bank of Milwaukie to secure a promissory note in the sum of $6,000. The total appraised value of the property, real and personal, was $47,383.22. The property devised to the plaintiff was appraised at $15,000. We quote:

"That your petitioner executed said note and mortgage along with and at the request of said decedent to enable said decedent to obtain said loan. That your petitioner did not at any time have said funds or any part thereof and that decedent had full use and control thereof and expended the same in his business."

The legal question presented is whether a specific devise of realty carries with it the right to have the land exonerated from a mortgage executed by the testator to secure his own debt, provided there is sufficient other property not specifically devised out of which such exoneration may be made.

The defendant concedes that the rule of exoneration applied at common law, but argues that the rule has been changed by OCLA, § 18-303, which reads as follows:

"A charge or incumbrance upon any real or personal estate, for the purpose of securing the

payment of money or the performance of any covenant or agreement, shall not be deemed a revocation of any will relating to the same estate previously executed; the devises and legacies therein contained shall pass and take effect subject to such charge or incumbrance." (See ORS 114.150 for change of phraseology.)

In support of her asserted right of exoneration the plaintiff cites the following Oregon decisions: *Marshall v. Middleton,* 100 Or 247, 191 P 886, 196 P 830; *Estate of Hodgkin,* 110 Or 381, 221 P 169, 223 P 738; *Ladd & Bush Trust Co. v. Kurtz,* 169 Or 225, 127 P2d 732. The defendant seeks to distinguish the cases cited on the ground that the statute deals only with encumbrances created after execution of a will. He points out that the encumbrances in all three of the cases cited were created prior to the execution of the will. The point is well-taken, but the cases cited do throw some light upon the issue.

In *Marshall v. Middleton,* supra, a devisee sought an order directing that land which had been specifically devised to him by the testator be exonerated from a mortgage lien by payment out of the residue of the estate. The devisee relied upon the provision of the will that "all just debts be paid * * * in the course of administration of my estate." This court said that:

"* * * in cases of this character the rule that the personalty is the primary fund, out of which the liens upon devised property must be satisfied, is reversed as between the executors and devisees, where devised property is encumbered by a lien not created by the testator, the property itself becomes the primary fund out of which the lien must be satisfied. * * *"

The facts were that the predecessor in title of the testator had executed a purchase money mortgage and the testator bought the property subject to the mortgage before he made his will. A suit had been instituted before the death of the testator to foreclose the purchase money mortgage. It was held that the testator was not indebted at all on the mortgage at the time of his death, and for that reason the rule of exoneration did not apply.

In *Estate of Hodgkin,* supra, the testatrix and her husband borrowed money and executed mortgages as security. It was alleged that the money was used by her husband for living expenses of his family and that the debt was really his debt and not that of the testatrix. Apparently this court so found, for it said that the property was mortgaged "not for her debt, but for the joint and several obligations of both." The mortgage was executed before the execution of the will, but that was not the basis of this court's decision. We quote:

> "It is a well-known rule of law in this state, so thoroughly established as to require no citation of authorities, that where real property is specifically devised and such property is subject to a mortgage made by the testator, such mortgage is to be satisfied and discharged out of any property not specifically devised, if such property is sufficient for the purpose and no different intent appears in the will. So the question here is: Does the clause in the will creating the trust in Miller amount to a specific devise of the Jennings Lodge property described therein?"

The court then held that there was no residuum because the will specifically devised all of the rest of the estate in trust for specified purposes. It was for this

reason that the court held against the right of exoneration.

The rule set forth in *Estate of Hodgkin* was reaffirmed in *Ladd & Bush Trust Co. v. Kurtz,* supra, but was found inapplicable to the facts of that case.

■ While these decisions are not determinative in the case at bar, they are significant. They recognize that aside from statute, the common-law rule prevails in Oregon. They indicate that if real property is mortgaged for the debt of the testator and thereafter a will is made devising the mortgaged property, the devisee is entitled to have exoneration out of any residuum not specifically devised, if such residuum is sufficient for the purpose, and if no different intent appears in the will. If that be the rule as to devisees of previously mortgaged property, the same rule would undoubtedly apply in the absence of statutes where the will devised property which was free from encumbrance and a mortgage was subsequently executed. A will devising property which was unencumbered when the will was executed would indicate an intent that the devisee should enjoy it unencumbered. We quote:

> "The general rule is (in the absence of statute) that land specifically devised which is subject to a mortgage or other incumbrance is to be exonerated out of the personal property of the testator. In order that this rule shall apply, it is necessary to show that the testator was personally liable for the payment of the mortgage debt, though it is not material whether the mortgage was executed before or after the execution of the will. * * *"
> 1 Underhill on the Law of Wills, § 384, p 528

To the same effect see 4 Page on Wills, Lifetime Ed, § 1486, p 296; and 57 Am Jur 993, Wills, § 1474.

At early common law, and even after the adoption of the Statute of Frauds, certain "changes of estate" occurring after execution of a will operated as a revocation of a previous devise by operation of law. For example, if a testator, having devised realty, entered into a contract to sell it, it was held that the contract operated in equity as a revocation of the devise, because the contract transferred the equitable interest in the property to the petitioner. 1 Page on Wills, Lifetime Ed, § 488, p 901, and § 494, p 912. It is clear that this rule of the common law concerning the effect of contracts of sale was changed by our statute, OCLA, § 18-302 (ORS 114.140). See *Pape v. United States National Bank,* 135 Or 650, 297 P 485; *In re Wilson's Estate,* 85 Or 604, 620, 167 P 580; *Watson v. McLench,* 57 Or 446, 451, 110 P 482, 112 P 416.

Not every transaction dealing with land previously devised had the effect of revoking the will at common law. In the case of mortgages, even though the legal title passed to the mortgagee to secure the performance of the obligation, yet equity looked upon the transaction as creating a lien only. The lien was discharged upon the performance of the obligation, and the satisfaction of the mortgage did not result in a technical reacquisition of the property. Therefore, the conveyance by way of mortgage did not revoke the will previously made. The discharge of the obligation allowed the property to pass under the will. If not discharged, the devisee took the property *subject to the lien of the mortgage.* As authority we quote:

"A conveyance of testator's interest to secure or to discharge an obligation of some sort, such as a mortgage, or a conveyance in bankruptcy, or to pay testator's debts, passed the legal title, but, in equity, merely created a lien which ended when the

obligation was satisfied; and such conveyance did not, therefore, revoke testator's prior devise in equity, although it might have such effect in law. If the obligation were discharged, the property which was devised passed under the will; and if it were not discharged, it operated as a partial revocation or ademption; and the *devisee took the property subject to such lien.*'' 1 Page on Wills, Lifetime Ed, § 495, p 913. (Italics ours.)

See also *McTaggart v. Thompson,* 14 Pa St 149 (1850); *Perkins v. Walker,* 1 Vernon 97, 23 Eng Rep 339 (1682); *Hall v. Dench,* 1 Vernon 329, 23 Eng Rep 501 (1685); *Jackson v. Parker,* Amb 687, 27 Eng Rep 447; 3 Jarman on Wills, pp 1904 and 1910.

Another rule of the common law of equal authority related to the right of a devisee who took subject to a mortgage to have exoneration from the undisposed-of residue.

"If a debt which testator owes personally in his lifetime is secured by a mortgage or other lien upon specific property belonging to testator, such debt, like any other personal debt is to be paid out of testator's personal estate in the absence of provisions in the will which show a contrary intention; and, as between the devisee or legatee of the property which is subject to such lien, and a general legatee to whom all the personalty is given, or a residuary legatee or next of kin, the debt must be paid out of the personalty." 4 Page on Wills, Lifetime Ed, § 1486, p 296.

In the case of mortgages placed by a testatrix against devised realty, the learned author states that it has been suggested as justification for the rule that the debt should be paid out of the personal estate, because the personal estate had the benefit of the debt.

4 Page on Wills, Lifetime Ed, § 1487, p 300. The same author says:

> "* * * His affirmative intention to have it paid out of the personalty is most likely where the incumbrance was created after the will was made, and, especially, where the will contains a positive direction to pay testator's debts out of his personalty, or out of certain kinds of personalty." 4 Page on Wills, Lifetime Ed, § 1487, p 300.

In the case at bar we think the first provision of the will directing that all just debts "be paid from the first money available from my estate" should be given weight, though it is not conclusive. Inventory of the estate shows $1,690 in a checking account, plus accounts receivable amounting to several thousand dollars, and other chattel property.

■ It is evident from the common-law background concerning implied revocation through "change of estate" that the statute here in question is not an abrogation of any common-law rule, but a codification thereof. The statute merely recognizes the rule that a subsequent mortgage does not amount to an implied revocation of a will, and the devisee takes subject, which is the common-law rule. But the doctrine of exoneration of devised realty from a mortgage was also applied at common law, as the defendant herein recognizes. It is hardly logical to say that the enactment of a statute which merely states a common-law rule has the effect of abrogating another common-law doctrine, where both rules were compatible at common law.

■■ The statute here considered relates to the validity of the will, and states that a devise of property which is subsequently mortgaged passes the interest of the testator. The rule of exoneration, on the other hand,

does not deal with the validity of the will, but sets forth a rule concerning the fund from which certain debts of the testator are to be paid. Both may exist side by side without inconsistency or conflict. In the pending case the residuary clause is in ordinary form and is not to be construed as a specific devise or bequest as was found necessary in *Estate of Hodgkin*, supra, where a specific devise of land was combined with the residue and the testator established a trust in both as a unit, with elaborate provisions for its execution.

The view that the statute here involved does not abrogate the common-law doctrine of exoneration is strongly supported in *Matthiessen's Estate*, 23 Cal App 608, 73 P2d 1267. That case presented a fact situation similar to the case at bar and required a construction of a statute of essentially the same import as the Oregon statute. The court there held that the statute had worked no change in the common-law rule of exoneration of the mortgaged realty. The California statute (Section 78 of the Probate Code) provided in substance that an encumbrance placed by a testator on property previously devised should not be a revocation of the devise, "but the property, subject to such charge or encumbrance, or the remaining interest therein, passes by the will." The California court quoted at length from *Estate of Woodworth*, 31 Cal 595, and *Estate of De Bernal*, 165 Cal 223, 131 P 375. The opinion is too long for extended quotation, but the uniform holding of the California cases cited is that:

> "* * * The object was simply to provide in express terms that a subsequent mortgage should not be construed as a revocation of the will as to the mortgaged land—that it should still go to the

devisees, but subject to the mortgage. That is to say, that, as to the mortgagee and devisee, neither the mortgage nor the devise should fail, unless the entire mortgaged estate should be required to satisfy the debt secured. This is a provision affecting the rights of the parties to the mortgage and devise. It has no reference whatever to the order of priority as between legatees, devisees and heirs. * * *"

It was also held that the statute "only enacted in express terms the rule of the common law upon the subject. * * *"

The apparent weight of authority is opposed to the conclusion of the California court. Upon analysis, however, the preponderance against the California decision is more apparent than real. In the case at bar, the defendant-testator cites *Meyer v. Cahen,* 111 NY 270, 18 NE 852, as supporting his position. In that case the indebtedness was incurred and a mortgage executed by the testator and a former wife in 1869. Thereafter he married the plaintiff and died in 1884, the mortgage debt still remaining. The mortgage was foreclosed against the land and plaintiff sought payment from the estate of the value of the mortgaged property at the time of the death of the testator. Three circumstances distinguish this case from the one at bar: (1) The mortgage antedated the will; (2) the residue consisted of both real and personal property which was devised and bequeathed to a trustee with elaborate specific provisions suggestive of the trust created in *Estate of Hodgkin,* supra; (3) the New York statute, instead of merely providing that the devises and legacies "shall pass and take effect subject to such charge or incumbrance" as provided

in the Oregon statute, went much further. The New York law provided that:

> "Whenever any real estate subject to a mortgage executed by an ancestor or testator shall descend to an heir, or pass to a devisee, such heir or devisee shall satisfy and discharge such mortgage out of his own personal property, without resorting to the executor or administrator of his ancestor, unless there be an express direction in the will of such testator that such mortgage be otherwise paid."

Under the wording of the New York statute it is apparent that the common-law rule concerning exoneration from a mortgage was abrogated. It is otherwise under the wording of the Oregon statute which merely codifies the common-law rule that, as between the devisee of the mortgagor and the mortgagee, the former takes subject to the mortgage, but with the right of exoneration from the estate. The defendant places great reliance on the case of *Hannibal Trust Co. v. Elzea,* 315 Mo 485, 286 SW 371. In that case the statute was identical to our own. The will devised land to the testator's niece, the defendant. Thereafter the land was mortgaged. On death of the testator, the court denied the defendant's application for exoneration. The decision supports the position of the executor in the case at bar. But the Missouri court placed reliance upon the New York cases and quoted from *Meyer v. Cahen,* supra, which had been decided under a different statute. Furthermore, the Missouri court held that:

> "* * * the Legislature intended thereby [by the statute] to completely and wholly abrogate the ancient common-law rule respecting devises of lands incumbered by the testator during his life."

The Missouri court appears to have believed that at common law a mortgage revoked a previous devise in the same manner as did a contract to sell. If this was not the basis of their decision, then they must have believed that the common-law rule that a mortgage does not revoke a previously executed will, as between the devisee and the testator-mortgagor, amounted at common law to a rule against exoneration as between the devisee and the personal estate. In either case, we are unable to concur in the reasoning of that court. Again the Missouri court said, "a somewhat similar statute seems to have been enacted in Oregon." Citing *Howe v. Kern,* 63 Or 487, 125 P 834, 128 P 818. The Oregon statute in question was not OCLA, § 18-303 (now ORS 114.150) which is involved here, but was the general statute, OCLA, § 19-805, amended by the Laws of 1947, ch 403, concerning the sale of real property to pay debts when the personal property has been exhausted. That statute exempted from the purview of the act property specially devised, and it still does. ORS 116.730.

The Oregon statute and the case cited from this jurisdiction had no bearing on the question considered by the Missouri court. The Missouri court could find only one Missouri dictum in support of its conclusion. *Peck v. Fillingham,* 199 Mo App 277, 202 SW 465. In the *Hannibal Trust Company* case, supra, the court quoted from 3 Woerner on American Law of Administration, 3d Ed, § 497, p 1733, as follows:

> " 'In some of the states it is provided that the incumbrance of any land devised shall not be deemed a revocation of the devise, but the devisee shall take the same subject to the incumbrance. These words, on first impression, might seem to imply that the onus of discharging the incumbrance

is thereby thrown upon the land. No adjudications of the point have come to the knowledge of the writer, but a number of considerations suggest that the Legislature meant simply to abrogate the rule existing at common-law, whereby an incumbrance of lands previously devised worked a revocation of such devise. Such statutes are found in California, Kansas, and Missouri.' "

The learned author later added a footnote to his text, which reads as follows:

" 'But since this original text as above was written, the case of Peck v. Fillingham, 199 Mo. App. 277, 202 S. W. 465, seems to hold that the real estate devised passes to the devisee subject to incumbrance; that is to say, the devisee cannot call on the personalty to disencumber his devised property. The court presents little or no argument for its conclusions.' "

*Gates v. Rice,* 320 Mo 580, 8 SW2d 614, is cited by the executor in the pending case, but it was decided upon the authority of *Hannibal Trust Co. v. Elzea,* supra.

*Savings & Trust Co. of St. Louis v. Beck,* (Mo App), 73 SW2d 282, was decided upon the authority of the Missouri cases already considered.

In *Cloninger's Estate,* 8 Wash2d 348, 112 P2d 139, the testator mortgaged realty on 18 August 1930. The will was executed on 7 March 1932. The testator died in 1934. The court said:

"Obviously, the statute does not take this case out of the general common-law rule, for, here, the mortgage antedated the will. It must be admitted, however, that the supreme court of Missouri, in construing an identical statute, has held it applicable to a case where the will, as here, was executed subsequent to the mortgage. We think, however,

that the Missouri court failed to take into account, and to accord full import to, the words '*previously executed.*' In this, that court failed to apply the rule of strict construction which is applicable to statutes in derogation of the common law.''

The only question necessary for decision and decided was that the statute which was identical to our own had no application and that the common-law rule governed the case. It was held that the devisee was entitled to exoneration.

The opinion in *Cloninger's Estate,* supra, referred to an earlier Washington decision, *In re McNulta's Estate,* 168 Wash 397, 12 P2d 389, in the following language:

"The appellant puts much reliance in our own case of In re McNulta's Estate, 168 Wash. 397, 12 P2d 389, 390. It must be confessed that much is there said to lend her comfort. * * *''

*McNulta's Estate* is, in our opinion, distinguishable from *Cloninger's Estate,* and from the case at bar. McNulta made a will on 16 June 1928 by which he devised to his wife in lieu of dower, any and all real estate within the state of Washington which he might own at the time of his death. On 18 June 1928 he entered into an executory contract for the purchase of realty in the state of Washington, which transaction was apparently contemplated when he made a will two days before. After his death, the devisee sought an order requiring the executor to pay out of the estate the balance due upon the executory contract. The court held that the devisee took only the interest in the land which the testator had at the time of his death, which, we would observe, was all of the interest which the testator ever had in the land. The situation was

unlike that which arises when a testator, owing the fee, mortgages it to secure a loan. We think the decision was not based upon the statute, which was inapplicable. The only reference to the statute was prefaced by the court as follows:

"The following sections of our Code indicate that, *in certain cases at least,* property vesting by devise or descent is so taken subject to incumbrances:" (Italics ours.)

In this case also, the court relied upon Missouri decisions.

The executor cites the case of *Doane v. Bigelow,* 293 Mass 406, 200 NE 121, but that case was decided under a statute which provided as follows:

"* * * 'a specific devise of real estate subject to a mortgage given by the testator, unless the contrary shall plainly appear by his will, shall be deemed to be the devise of the interest only which the testator had at the time of his decease in such real estate over and above such mortgage' * * *."

The case is not in point.

*In re Earle's Estate,* 331 Pa 23, 199 A 173, was decided under a statute which bears no resemblance to that of Oregon. The same is true of *Swetland v. Swetland,* 100 NJEq 196, 134 A 822, and *Fidelity Union Trust Co. v. Laise,* 142 NJEq 366, 60 A2d 250.

▪ The fact that the devisee signed the note and mortgage for the accommodation of the testator did not bar her from the right of exoneration if she was otherwise entitled thereto. 4 Page on Wills, Lifetime Ed, § 1486, p 298; *Saling v. Saling,* 95 NJEq 611, 124 A 249; *Farmers' State Bank v. Forsstrom,* 89 Or 97, 173 P 935.

■■ In view of our analysis of the cases cited by the defendant, and being fortified in our own opinion by the California decisions on which the plaintiff relies, we hold that the common-law right to exoneration has not been abrogated by the Oregon statute. This case is decided on principles of statutory construction in the light of the common law. But there are equitable considerations which support our conclusion. A will speaks as of the time of the testator's death, but the intent of the testator is manifested as of the time when the will is executed. 57 Am Jur 744, Wills, § 1145. When the testator herein executed his will, the property devised to his widow was unencumbered. She could accept the devise only by waiving her right of dower. From the reading of the will, we think it unlikely that the testator intended that she, having waived her right of dower, should find herself subject to the possible loss of the entire property unless she was able to put up $6,000 for the redemption thereof.

The order denying the petition of the plaintiff for exoneration is reversed and the cause is remanded for further proceedings conformable to this opinion.